UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 24-cr-9(1) (ECT/JFD) |
| Plaintiff, | |
| v. | **ORDER ACCEPTING REPORT AND RECOMMENDATION** |
| Rubin David Adams, | |
| Defendant. | |

---

Magistrate Judge John F. Docherty has issued a Report and Recommendation [ECF No. 47] ("R&R") concerning two suppression motions filed by Defendant Rubin David Adams [ECF Nos. 34, 35]. Judge Docherty recommends denying Adams's motion to suppress eyewitness identification [ECF No. 34] and his motion to suppress evidence obtained by search and seizure [ECF No. 35] from his Facebook account and Graham Avenue apartment. *See* R&R. Adams has filed objections, and the R&R will be reviewed *de novo*. ECF No. 48; 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3). The R&R will be accepted because Judge Docherty's conclusions are correct.

I

Adams is charged with two counts of armed robbery of a mail carrier in violation of 18 U.S.C. § 2114(a), one count of theft of postal keys in violation of 18 U.S.C. § 1704, and one count of mail theft in violation of 18 U.S.C. § 1708. ECF No. 14. The charges stem from the armed robberies of two United States Postal Service ("USPS") carriers on November 18 and 19, 2023—one in Edina, Minnesota, and the other in Brooklyn Center,

Minnesota. *See id.*; *see also* Gov't Ex. 6.[1]  In each instance, a man held a postal carrier at gunpoint, demanding the postal carrier's "mailbox key," a USPS key used to unlock secure mail collection boxes or other mail receptacles. Gov't Ex. 6 ¶¶ 4–8.  After the Brooklyn Center robbery, the United States Postal Inspection Service received reports of checks stolen from mail placed in blue collection boxes in Brooklyn Center. *Id.* ¶ 34–37.  The R&R details the key events leading up to Adams being charged for his alleged role in the robberies, including salient facts regarding the eyewitness identification and the Facebook and Graham Avenue apartment search warrants at issue here.  This Order presumes familiarity with the R&R.

II

Adams lodges non-specific objections to Judge Docherty's recommendation to deny the motion to suppress eyewitness identification, relying on his previous submissions to support the objections. ECF No. 48 at 1; *see also* ECF Nos. 34, 43. Adams maintains that the United States Postal Inspection Service's eyewitness identification procedures used here were impermissibly suggestive and the victim-witnesses' identification of Adams unreliable. ECF No. 43 at 9.

(1) Adams argues that his photograph stood out among the lineup photograph array shown to the victim-witnesses, improperly suggesting that Adams was a suspect. Specifically, Adams argues that the "negative space around [Adams's] head and shoulders" in his lineup photograph was "significantly less than is present in the other photographs,

---

[1]   Government Exhibits 1–6 were admitted at the hearing on the motions to suppress without objection and submitted to the Court on a flash drive. *See* ECF No. 41 at 17–18, 28.

2

giving the appearance that the photographer zoomed in on [Adams], but not on the other individuals." ECF No. 43 at 10; *see also* Gov't Exs. 2, 4. Adams contends that this "significant difference in appearance" between his photograph and the others in the lineup array "effectively isolated [Adams's] photograph," improperly "draw[ing] the viewer's attention" to Adams and "impermissibly suggest[ing] [he] was the suspect." ECF No. 43 at 10.

The R&R properly found Adams' arguments regarding his depiction in the photographs unpersuasive. To start, I reject Adams's characterization of the differences among the photographs. As the R&R correctly explained, the depictions of the photographs' subjects are nearly identical, with only minute, insignificant differences among the photographs resulting from photographs being taken of different men at different times. R&R at 7. Nothing about the photograph suggests that Adams was the suspect, as Adams claims, and Judge Docherty's reasoning on this issue is correct.

(2) Adams also contends that Z.S.'s identification of Adams in the December 5 lineup is impermissibly suggestive and unreliable because on November 20, Z.S. had identified a different man as the man who robbed him with 70% certainty. ECF No. 43 at 10. Adams argues that putting Z.S. through a second lineup after he already had identified an individual with 70% confidence, and less than three weeks after the first lineup, improperly suggested that Z.S. did not accurately identify the first individual. *Id.*

The R&R correctly rejected this argument as well. There is no dispute that the November 20, 2023 lineup array did not include a photograph of Adams. *See* R&R at 8; ECF No. 46 at 3. Adams's argument that the relatively short turnaround between the two

3

lineups suggested Z.S. got it wrong the first time (and made the December 5 lineup suggestive) may be a bit more persuasive if the November 20 lineup array had included a photo of Adams, and Z.S. did not identify Adams during that first lineup.  But that is not what happened.  As Judge Docherty properly concluded, there is no logical connection between Z.S.'s selection of someone else in the first lineup array and his selection of Adams from the second lineup, which undisputedly included photographs of six different men.  *See* R&R at 8.  This is especially so when Z.S. had observed at least two people involved in the robbery—the robber and the driver of the Chevrolet.  *See* Gov't Ex. 6 ¶ 4.  The R&R's conclusion on this issue was correct.

Judge Docherty addressed and correctly resolved every argument that Adams raised in his opening brief on this matter.  Having reviewed *de novo* the Government's exhibits, including the lineup photographs [Gov't Exs. 2, 4], the audio recordings of the eyewitness identification [Gov't Exs. 1, 3], the statements signed by Z.S. and T.G., the hearing transcript [ECF No. 41], and the Parties' submissions, Adams offers nothing to undermine the R&R's conclusions that there was no improper behavior by the law enforcement agents during the eyewitness identifications, and that the law enforcement agents' procedures did not create a "very substantial likelihood of irreparable misidentification" justifying exclusion.  *See Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).  Accordingly, any objections to the R&R's

4

conclusions regarding the motion to suppress eyewitness identification are overruled, and Adams's motion to suppress eyewitness identification will be denied.

III

Adams lodges largely non-specific objections to the R&R's recommendation to deny his motion to suppress evidence obtained by search and seizure, again relying on his previous submissions to challenge the searches of his Facebook account and the Graham Avenue apartment. *See* ECF No. 48 at 2.

(1) Adams challenges Judge Docherty's conclusion that there was probable cause to issue the Facebook warrant. The Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010)). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983). The probable cause determination requires applying a totality of circumstances test, *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013), as well as conducting "a commonsense analysis of the facts available to the judicial officer who issued the warrant." *Colbert*, 605 F.3d at 576. The issuing magistrate's determination of probable cause must be afforded "great deference," *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004), and should be affirmed so long as there was a "substantial basis for concluding that probable cause

5

existed." *United States v. Garcia-Hernandez*, 682 F.3d 767, 771 (8th Cir. 2012) (quotation omitted).

Adams contends that the search warrant application for data associated with his Facebook account lacked probable cause because it "contained mere conclusory statements regarding [Adams's] alleged involvement in the November 19 & 22, 2023, robberies" but it did not identify Adams as present at the robberies, only tying him to the robberies by way of his connection to another individual and by Adams's alleged Facebook posts regarding fake drivers' licenses.  ECF No. 43 at 3.

The Facebook warrant was supported by probable cause.  The warrant application traces a logical path from Adams's public-facing Facebook posts to the determination that there was a "fair probability that . . . evidence of a crime" would be found in Adams's Facebook data.  *See* Gov't Ex. 5.  As Judge Docherty aptly described, law enforcement was investigating several crimes, and the warrant described public-facing evidence indicating that Adams was involved in a check counterfeiting operation and a business selling fake identification documents, one of which was used in Adams's brother's purchase of the Chrysler 300 used to commit the robberies.  R&R at 10.  In this regard, Adams's argument that the warrant application needed to contain an affirmative allegation that Adams committed the robberies in question takes too narrow a view.  There was a substantial basis to determine that probable cause existed to issue a search warrant for Adams's Facebook account.

(2) Adams also argues that the Facebook warrant was overly broad and "placed almost no limits on the scope of data to be seized."  ECF No. 48 at 2.  Judge Docherty

6

addressed this argument, finding that the warrant was limited temporally to the time around when the robberies and specific acts of fraud and theft at issue in the case occurred, and that probable cause supported the seizure of each item specified, reasoning that "[a] search warrant that authorizes the seizure of a large amount of data, even of large amounts of data spread across different data types, is not *per se* unconstitutional, so long as each item specified in the warrant is supported by probable cause that the item will be found in the place to be searched and that the item is evidence of a crime or contraband." R&R at 12. The Court agrees.

Adams also takes issue with Judge Docherty's conclusion that the *Leon* good-faith exception to the Facebook warrant applies, arguing that "law enforcement cannot be said to have objectively and reasonably relied on such a warrant, particularly a warrant that placed almost no limits on the scope of data to be seized." ECF No. 48 at 2. "[T]he exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238–39 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The warrant in this case was not lacking in probable cause, and thus it was reasonable for officers to rely on it. *See Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."). Judge Docherty properly applied *Leon* to the

7

Facebook warrant, whether as an alternative or sole basis to reject Adams's argument that evidence should be suppressed. R&R at 12–14.

(3) Adams argues that the Graham Avenue apartment warrant, Gov't Ex. 6, was overbroad and improperly granted officers discretion to determine which items to seize. ECF No. 48 at 2; *see also* ECF No. 43 at 6–8. Specifically, Adams argues that the warrant's authorization to seize "records indicating the owner's state of mind" related to the specific offenses granted law enforcement too much discretion. *See* ECF No. 43 at 7–8. Judge Docherty properly concluded that such "state of mind" language in a search warrant has been found "constitutionally adequate because such evidence is often required to prove a defendant's *mens rea* in committing a crime." *See* R&R at 16 (citing ECF No. 46 at 12–13); *see United States v. Cutbank*, No. 21-cr-268 (SRN/LIB), 2022 WL 4112596, at *24 (D. Minn. June 21, 2022), *R. & R. adopted*, 2022 WL 3572955 (D. Minn. Aug. 19, 2022) (finding warrant sufficiently particular where it sought "[e]vidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation"); *United States v. Jones*, No. 19-cr-341 (NEB/LIB), 2021 WL 1321270, at *6 (D. Minn. Jan. 7, 2021), *R. & R. adopted*, 2021 WL 960910 (D. Minn. Mar. 15, 2021) (same); *United States v. Hassan*, No. 18-cr-26 (PJS/SER), 2018 WL 2344452, at *6 (D. Minn. May 8, 2018), *R. & R. adopted*, 2018 WL 2342902 (D. Minn. May 23, 2018) (finding Google account warrant sufficiently particular where it sought "evidence of the user's state of mind related to the crimes under investigation").

Judge Docherty carefully considered Adams's other challenges to the breadth or particularity of the Graham Avenue warrant, and correctly determined that "[t]here was

sufficient support in the warrant application to guide the executing officers in exercising a limited discretion in deciding what property to seize in searching the Graham Avenue apartment, and the categories listed all substantially relate to an offense under investigation when the warrant was granted." ECF No. 47 at 16–17.  Moreover, the Court agrees with Judge Docherty's conclusion that even if the Graham Avenue warrant were overbroad, no obvious deficiencies render the warrant facially unconstitutional, and therefore the *Leon* good faith exception applies.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. The Objections to the Report and Recommendation [ECF No. 48] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 47] is **ACCEPTED** in full;

3. Adams's Motion to Suppress Eyewitness Identification [ECF No. 34] is **DENIED**; and

4. Adams's Motion to Suppress Evidence Obtained by Search and Seizure [ECF No. 35] is **DENIED**.

Dated:  December 2, 2024					s/ Eric C. Tostrud
							Eric C. Tostrud
							United States District Court